680 So.2d 1275 (1996)
Mrs. Billie COLLINSWORTH, Plaintiff-Appellant,
v.
Orin F. FOSTER, et al., Defendants-Appellees.
No. 28,671-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1996.
*1276 Bobby L. Culpepper, Jonesboro, for Plaintiff-Appellant.
Cook, Yancey, King & Galloway by Herschel E. Richard, Jr., Shreveport, for Defendants-Appellees.
Before MARVIN, BROWN and PRICE, JJ.
MARVIN, Chief Judge.
In this action questioning medical insurance coverage, Billie and Ben Collinsworth appeal the district court's grant of summary judgment in favor of one of the defendants, International Surplus Lines Insurance Company ("ISLIC") that dismissed the claims against it.
We reverse the summary judgment and remand.

FACTUAL AND PROCEDURAL BACKGROUND
In her original petition filed on December 2, 1987, Mrs. Collinsworth alleges that she applied for group major medical insurance coverage on March 5, 1987, through her employer, the Bienville Voluntary Council on the Aging, Inc. ("Bienville"), and its associate, the Louisiana Association of Councils on Aging, Inc ("the Association").
ISLIC, the appellee, is Bienville's liability insurer. According to the petition, Mrs. Collinsworth applied for coverage for herself and her husband as part of a group major medical insurance plan to be effective March 1, 1987, provided through Bienville by Protective Service Life Insurance Company ("Protective").
In her deposition, Mrs. Collinsworth testified that Mr. Orin Foster, an employee of Group Insurance, Inc., an insurance agency, was present when she filled out the application on March 5, 1987. According to Mrs. Collinsworth, Foster told her at that time that she was eligible for the insurance, although she could not remember whether Foster also said that she and her husband would be provided coverage at that time. Mrs. Collinsworth also testified that she could not remember anyone other than Foster telling her before April 15, 1987, that they were covered.
Mrs. Collinsworth alleged in her petition that Foster and/or Group Insurance negligently prepared an insurance flyer describing benefits which caused her to believe that she and her husband were insured within 24 hours of her application. Bienville continually withheld premiums for the insurance from Mrs. Collinsworth's paycheck for approximately three months thereafter.
On April 15, 1987, Ben Collinsworth was admitted to the Lincoln General Hospital in Ruston, Louisiana, and then to the Schumpert Medical Center in Shreveport for treatment of a heart condition and surgery. Mrs. *1277 Collinsworth allegedly made several unsuccessful attempts to verify insurance coverage with Mr. Foster before placing her husband in the hospital, but asserts he did not answer. However, Mrs. Collinsworth's petition alleges that prior to her husband's hospitalization, Mrs. Gertie Baker at Bienville specifically told her that she and her husband were covered by the group insurance policy.
On the day that her husband was admitted to the hospital, Mrs. Collinsworth asserts that she went to Bienville's offices, attempting to confirm coverage under the plan, where she spoke with Mrs. Baker, who was her supervisor. Mrs. Collinsworth testified that after Baker told her that, as far as Baker knew, she and her husband were covered, Baker then telephoned Foster's office and the Association to further verify coverage. According to Mrs. Collinsworth, Foster was unavailable at the time, but Baker did reach someone at the Association who told her that "as far as they knew," the Collinsworths were covered. Then Baker, in turn, told Mrs. Collinsworth again that, "as far as she knew," Mrs. Collinsworth and her husband were covered. According to the Collinsworths, they decided to proceed with Mr. Collinsworth's treatment and surgery based upon this "reassurance" that they had insurance coverage, instead of avoiding some of the expense by going to L.S.U. Medical Center in Shreveport.
The cost of Mr. Collinsworth's treatment and surgery totaled $34,407.99. When the Collinsworths submitted the medical bills to Protective for payment, they were notified, for the first time, that they were not covered by the insurance. The Collinsworths claim that they were not notified of their lack of coverage until after May 13, 1987, almost a full month after Mr. Collinsworth's surgery.
Mrs. Collinsworth filed suit, as the sole plaintiff, on December 2, 1987, against Foster, Protective, Group Insurance, Inc. and the Association, alleging that the defendants were liable for breach of the insurance contract or, in the alternative, for negligently misleading her into believing that she and her husband were covered.
On June 17, 1988, pursuant to the district court judgment sustaining Protective's dilatory exception of nonjoinder of necessary party, Mrs. Collinsworth filed an amended petition to include her husband as a plaintiff and her employer, Bienville, as a defendant. Almost six years later, on May 20, 1994, the Collinsworths filed an amended and supplemental petition naming ISLIC as a defendant, alleging that ISLIC provided liability insurance coverage to Bienville for Bienville's alleged negligence.
The Collinsworths ultimately compromised and settled their claims with all defendants except Bienville and ISLIC. ISLIC filed a motion for summary judgment on July 6, 1995. The district court granted the summary judgment September 12, 1995, dismissing the Collinsworths' claims against ISLIC without assigning reasons.

STANDARD OF REVIEW
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991).
By Act No. 9 of the first extraordinary session of 1996, the Louisiana legislature amended the summary judgment article, La. C.C.P. art. 966, to provide that summary judgment procedure is favored, to set forth criteria for mandatory granting of the motion, to provide that judgment on the motion shall be rendered at least ten days prior to trial, and to specify that the burden of proof shall remain with the mover. The amended version of Art. 966, which became effective May 1, 1996, provides that summary judgment procedure is "designed to secure the just, speedy, and inexpensive determination of every action, ... and shall be construed to accomplish these ends."[1] One of our sister *1278 courts has construed the amendment to be procedural in nature and, therefore, retroactive in application. La.C.C. art. 6; Short v. Giffin, 96-0361 (La.App. 4th Cir. 8/21/96) 682 So.2d 249.
Even though the legislative intent is now stated to favor summary judgments, the amended version of Art. 966 does not change the law regarding the burden of proof in a summary judgment proceeding. The burden of proof remains on the mover to show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.C.C.P. art. 966; Short v. Giffin, supra. Notwithstanding the amendment to Art. 966, if the mover fails to show that no genuine issues of material fact remain, summary judgment is not proper.
Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Penalber v. Blount, 550 So.2d 577 (La.1989). Materiality is also a relative concept defined and circumscribed by the substantive law applicable to the case. Kirkland v. Riverwood Intern. USA, Inc., 26,741 (La.App. 2d Cir. 6/21/95) 658 So.2d 715.

DISCUSSION
In support of its motion for summary judgment, ISLIC argued three points in the trial court: (1) any alleged negligence of its insured, Bienville, is not covered by the ISLIC policies provided to Bienville, which exclude coverage for any claim arising out of Bienville's activities "in a fiduciary capacity as respects any employee benefit plan"; (2) because Bienville was not negligent, ISLIC is not liable to the plaintiffs; and (3) the ISLIC policies do not cover the Collinsworths' alleged damages because any alleged negligence of Bienville occurred prior to the effective date of ISLIC's first policy. ISLIC relies on the two policies of liability insurance it issued to Bienville and on the deposition of Mrs. Collinsworth.

Insurance Exclusion
We also address the issue of whether the language of the policy exclusion is ambiguous or is subject to more than one reasonable interpretation.
An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94), 634 So.2d 1180; Smith v. Matthews, 611 So.2d 1377 (La.1993). An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La. 1/14/94), 630 So.2d 759; Jefferson v. Monumental General Ins. Co., 577 So.2d 1184 (La. App. 2d Cir.1991); Lindsey v. Poole, 579 *1279 So.2d 1145 (La.App. 2d Cir.1991), writ denied.
Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Louisiana Ins. Guar. Ass'n, supra. The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage. If, after applying the other rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, in the insurance context, against the insurer who issued the policy and in favor of coverage to the insured. Louisiana Ins. Guar. Ass'n, supra; Smith v. Matthews, supra. If the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. Reynolds v. Select Properties, Ltd., supra; Garcia v. St. Bernard Parish School Bd., 576 So.2d 975 (La.1991); Breland v. Schilling, 550 So.2d 609 (La.1989).
Both ISLIC insurance policies issued to Bienville contain the following exclusion:
The Company shall not be liable to make payment for Loss in connection with any claim made against the Insureds allegedly, based upon or arising out of any one or more of the following:
* * * * * *
9. The Insured's activities in a fiduciary capacity as respects any employee benefit plan.
ISLIC contends that if its insured, Bienville, owed a duty to Mrs. Collinsworth, then that duty was a result of Bienville acting in a fiduciary capacity with respect to the group major medical insurance plan and, thus, any loss arising out of a breach of that duty would not be covered by the ISLIC policies by virtue of exclusion number 9.
ISLIC argues here, as it did in the district court, that its policy exclusion is unambiguous, asserting that the terms "fiduciary capacity" and "employee benefit plan" have been defined by our courts and are subject to their plain, ordinary and generally prevailing meaning. ISLIC then asserts that any alleged negligence of Bienville could only be the result of Bienville acting in a fiduciary capacity with regard to an employee benefit plan. We disagree.
While it is true that any alleged negligence of Bienville depends upon the existence of a legal duty owed by Bienville to the Collinsworths, we cannot say that any such duty, as a matter of law, must have necessarily resulted from Bienville acting in a fiduciary capacity with regard to an employee benefit plan.
The alleged acts of negligence of Bienville consisted of affirmative misrepresentation of insurance coverage, failing to insure that employees such as Mrs. Collinsworth were provided coverage by the group plan, failing to have the insurance coverage reinstated and continuing to withhold premiums out of employees' paychecks after they were informed that the coverage was ineffective. We cannot say that alleged misrepresentation of insurance coverage while wrongfully withholding premiums out of paychecks, as a matter of law, arises from an "activity in a fiduciary capacity as respects any employee benefit plan." The language of the policy exclusion relied upon by ISLIC, "in a fiduciary capacity as respects any employee benefit plan," does not, in our opinion, unambiguously exclude all coverage for Bienville's asserted representations to plaintiffs.

Alleged Negligence of Bienville
ISLIC argues that Bienville was not negligent and, therefore, as Bienville's insurer with only secondary and derivative liability, it cannot be liable to the Collinsworths. In support of its contention, ISLIC points to Paragraph 7 of the Collinsworths' petition, which states:
Upon information and belief, plaintiff alleges that her employer, Bienville Voluntary Council on the Aging, Inc. was not informed of her ineligibility until May 13, 1987, almost a full month after her husband's surgery.
ISLIC also points out that Mrs. Collinsworth, when asked in her deposition what Bienville should have done to prevent her damages, stated that she did not know.
*1280 However, Mrs. Collinsworth's deposition also contains this testimony:
Q. Okay. Do you feel like someone misled you about this policy; this insurance policy?
A. Yes.
Q. Who do you think misled you?
A. I don't know; but we should have been covered.
* * * * * *
Q.... Do you understand that in the petitions that you've filed in this lawsuit, you have alleged that the Bienville Council or its employees were negligent and that their negligence caused your loss?
A. Yes.
Q. Okay. What, what did they do or what did they not do that caused you this loss?
A. Well, they, I believe that they could have found out if we had insurance or not.
While this testimony smacks of an omission to perform a fiduciary duty, the totality of Mrs. Collinsworth's deposition testimony presents unresolved issues concerning Bienville's alleged specific and affirmative misrepresentations in response to Mrs. Collinsworth's inquiries. We cannot say, based upon the deposition, that ISLIC has satisfied its burden of showing that there are no genuine issues of material fact.

Effective Dates of Policies
Lastly, ISLIC argues that summary judgment is proper because any alleged acts of negligence of Bienville occurred before the effective date of the liability insurance policies issued by ISLIC. Again, we do not agree.
ISLIC issued two policies of liability insurance to Bienville; the first with a policy period March 26, 1987 to March 26, 1988, and the second with a policy period March 26, 1988 to March 26, 1989. ISLIC argues that because Mrs. Collinsworth applied for group major medical coverage on March 5, 1987, then any of Bienville's alleged acts of later misleading her into believing that she and her husband were covered occurred before the effective date of the first ISLIC policy.
We conclude on this record that Bienville's alleged negligence is not so limited. Mrs. Collinsworth's supervisor at Bienville allegedly reassured her that she and her husband had insurance coverage on the day that Mr. Collinsworth was initially hospitalized, April 15, 1987. This reassurance, attributable to Bienville, allegedly played a major role in the Collinsworths' decision to go forward with Mr. Collinsworth's treatment and surgery at Lincoln General Hospital and Schumpert Medical Center at a greater expense than at the L.S.U. Medical Center. Further, Bienville allegedly wrongfully withheld insurance premiums from Mrs. Collinsworth's paycheck until June of 1987. These alleged actions clearly fall within the coverage periods of the ISLIC policies which began March 26, 1987.

DECREE
Genuine issues of material fact are found.
The summary judgment is reversed at the cost of appellee and the matter is remanded for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] The 1996 amended version of La.C.C.P. art. 966 provides:

A.(1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against the adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.
D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.
E. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
F. A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages.
G. Notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover.