986 So.2d 700 (2008)
Don L. EISENHARDT, Plaintiff-Appellant
v.
Dorles SNOOK and State Farm Fire & Casualty Company, Defendants-Appellees.
No. 43,128-CA.
Court of Appeal of Louisiana, Second Circuit.
May 14, 2008.
*703 Rice & Kendig by J. Marshall Rice, Shreveport, for Appellant.
Hubley, Marcotte, Rhodes and Hussey by Michael S. Hubley, Shreveport, for Appellees.
Before BROWN, WILLIAMS, CARAWAY, PEATROSS and LOLLEY, JJ.
LOLLEY, J.
Plaintiff, Don Eisenhardt, appeals a judgment by the Twenty-Sixth Judicial District Court, Parish of Bossier, State of Louisiana, in favor of Dorles Snook and State Farm Fire and Casualty Insurance Company ("State Farm"), which held *704 Snook was not liable for Eisenhardt's accident. For the following reasons, we reverse in part, amend in part, and as amended, affirmed.

FACTS
This slip and fall accident occurred on July 1, 2005, at the home of the defendant, Dorles Snook. On the day of the incident, Snook and her live-in boyfriend, Don Eisenhardt, were doing household chores at Snook's home. When Snook was finished, and while Eisenhardt was taking a shower, she went to take out the trash when the garbage bag broke and spilled onto the front steps. After picking up what she could, Snook sprayed down the steps using a hose to remove any remaining residue.
Shortly after his shower, Eisenhardt prepared to leave the house. He went out the front door where he proceeded to slip and fall down the front steps. Eisenhardt went to the hospital complaining of pain in his right hand and lower back. X-rays confirmed that Eisenhardt suffered from a 5th metacarpal fracture and low back pain. He was prescribed pain medication and saw Dr. Anne Hollister, an orthopedic hand specialist at LSUHSC.
Eisenhardt brought suit against Snook, and her insurance carrier, State Farm, for his accident. Prior to trial, counsel for both parties stipulated to the medical records and insurance coverage. At the end of the bench trial, the trial court held that Snook was not liable and accordingly signed a judgment in favor of the defendants. This appeal ensued.

LAW AND DISCUSSION
Eisenhardt argues that the trial court erred in finding that he was 100% responsible for his accident. Instead, Eisenhardt contends that Snook created a defective condition after hosing down the spilled garbage and "but for" the water and residual garbage material, he would not have slipped on the stairs.

Unreasonable Risk of Harm
When an individual is injured as a result of an unreasonably dangerous condition existing on a landowner's property, he can recover damages relying on La. Civ.Code art. 2315, which is the basis of general negligence liability. A plaintiff has the burden of proving: (1) the property which caused the damage was in the custody of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises; (3) the property owner had actual or constructive notice of the risk; and, (4) the defect in the property was a cause-in-fact of the resulting injury. The owner or person having custody of immovable property has a duty to keep the property in a reasonably safe condition and must discover any unreasonably dangerous condition on the premises and either correct that condition or warn potential victims of its existence. Ebarb v. Guinn Brothers, Inc., 29,179 (La.App. 2d Cir.02/26/97), 691 So.2d 228, writ denied, XXXX-XXXX (La.06/13/97), 695 So.2d 981.
The determination of whether a defect presents an unreasonable risk of harm involves factual findings which differ in each case. Thus, there is no fixed or mechanical rule for determining whether a defect presents an unreasonable risk of harm. Buchignani v. Lafayette Insurance Co., 41,384 (La.App. 2d Cir.08/23/06), 938 So.2d 1198. The trier of fact determines whether a defect presents an unreasonable risk of harm and that determination is reviewed under the manifest error standard. Id. The vice or defect must present a dangerous condition that would be reasonably expected to cause injury to a prudent person exercising reasonable care under the circumstances. Williams v. City *705 of Baton Rouge, XXXX-XXXX (La.App. 1st Cir.03/28/03), 844 So.2d 360.
Here, the trial court did make a determination that a hazard was created after Snook spilled the garbage and washed it down. Specifically the trial court believed that Eisenhardt was "probably injured, probably fell" and that "he should have seen the water and known that there was a hazard." After reviewing the record, we agree with this analysis. It is clear that Snook owned the house, she had actual notice of the risk since she caused the steps to be slippery, and was in the best position to warn Eisenhardt. The medical reports and testimony reflect that Eisenhardt's injuries were consistent with a fall. We find no manifest error in the determination that the slippery steps created a hazard.

Allocation of Fault
In assessing the comparative fault of parties, various factors may influence the degree of fault assigned. These include whether the conduct resulted from inadvertence or involved an awareness of danger, how great a risk was created by the conduct, the significance of what was sought by the conduct, the superior or inferior capacity of the parties, and any extenuating circumstances which might require one to proceed in haste and without proper thought. Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La.1985); Buchignani, supra. The trier of fact is owed great deference in its allocation of fault and may not be reversed unless clearly wrong or manifestly erroneous. Hughes v. Scottsdale Ins. Co., 35,043 (La.App. 2d Cir.08/22/01), 793 So.2d 537.
In the instant case, the trial court held that Eisenhardt was 100% responsible for his fall. Based on the facts in the record, we disagree. Since the trial court determined that a hazard existed, it was manifestly erroneous to find no fault on the part of the owner of the house, Snook, for creating the hazard and not warning Eisenhardt about it. While the record bears out that Eisenhardt was pre-occupied and not as prudent as he should have been when he was leaving the house, his accident was, in part, due to the slippery surface of the steps.
Although State Farm questions Eisenhardt's credibility, the trial court specifically found credibility was not "necessary to get into." In essence, the trial court made a determination that Eisenhardt's credibility was not an issue. When the findings by the trier of fact are based on credibility, respect must be given to the fact finder's determination, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on understanding and believing what is said. Bolton v. Louisiana State University Medical Center, 601 So.2d 677 (La.App. 2 Cir.1992). A factfinder's determination of credibility is subject to the manifest error standard of review. Thibodeaux v. Jurgelsky, 04-2004 (La.3/11/05), 898 So.2d 299, 316. Here, we cannot find the trial court's credibility determination, or lack thereof, was manifestly erroneous.
Having found the trial court was clearly wrong in failing to find Snook at fault for any part of the accident, we must re-allocate fault. In determining the percentages of fault the trier of fact shall consider the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Toston v. Pardon, XXXX-XXXX (La.04/23/04), 874 So.2d 791. However, an appellate court can only adjust the allocation to the highest or lowest point respectively which is reasonably within the trial court's discretion. Id. Accordingly, *706 we find that Snook was 30% at fault and Eisenhardt 70% at fault.

Scope of Coverage
State Farm and Snook make much of the fact that Eisenhardt was Snook's "live-in" boyfriend and argue that he should therefore not be treated as a "guest or invitee" because he occupied the position of "man of the house" but for the fact that he is not legally married to Snook. While this argument is compelling, it is not dispositive. We have said in the past that the common law classifications of invitee-licensee-trespasser are of little help in determining the duty of the landowner. Ebarb, supra. Although the plaintiff's status has some bearing on the question of liability, the status is not determinative. Id. While Louisiana does provide interspousal immunity under La. R.S. 9:291 preventing collusion by spouses for tort recovery, clearly this is not applicable. In the case at hand, the State Farm policy contract determines coverage and for that matter exclusions; as such, State Farm is in the best position to determine the "scope of protection." See Jenkins v. CNA Ins. Co., XXXX-XXXX (La.App. 1st Cir. 1998), 726 So.2d 71. Here, there was no evidence of the policy excluding a "live-in" significant other. Therefore, this argument is without merit.

Damages
On a finding that the trial court erred in its dismissal of plaintiff's claim, the appellate court is empowered by La. C.C.P. art. 2164 to render any judgment which is just, legal and proper. Minkler v. Chumley, 32,558 (La.App. 2d Cir.12/8/99), 747 So.2d 720; Hammons v. City of Tallulah, 30,091 (La.App. 2d Cir.12/10/97), 705 So.2d 276. This includes an award of damages when the trial court initially rejects a plaintiff's demands and where the record contains sufficient proof of damages. Minkler, supra. By making the initial award of damages, an appellate court is not limited to either the highest or the lowest amount of a reasonable range of awards which would have been affirmed on appeal; the appellate court's responsibility is to award an amount which is fair and just for damages supported by the record. Id. Here, in light of the re-allocation of fault, we must determine the appropriate monetary award for the medical expenses and general damages Eisenhardt is entitled to. We note, however, this amount is subject to the reduction for comparative negligence. La. C.C. art. 2323.
"Special damages" are those which can be fixed to a pecuniary certitude. Hollenbeck v. Oceaneering Intern., Inc., 96-0377 (La.App. 1st Cir.11/8/96), 685 So.2d 163. It is clear that Eisenhardt fractured a finger on his right hand and injured his lower back. There is an accurate accounting from the various receipts and bills from Eisenhardt's medical treatments which supports an award of $5,677.02 in special damages.
General damages are those that may not be fixed with pecuniary exactitude. Such damages involve mental or physical pain or suffering, inconvenience, the loss of physical enjoyment or other losses of life or lifestyle that cannot be definitively measured in monetary terms. Minkler, supra. Eisenhardt testified that he continues to suffer from lower back pain, and that he continues to have weakness, pain, and visible deformity in his right hand. He claims that he is no longer able to perform mechanic work, his line of work.
For guidance, we look to previous findings for similar injuries. In Brown v. Brookshire's Grocery, 38,216 (La.App. 2 Cir. 3/12/04), 868 So.2d 297, the plaintiff's "primary deficits were decreased range of *707 motion and increased pain with the use of his left upper extremity" and complained of back pain after a slip and fall accident at a grocery store. In Brown, this court upheld an award for $15,000.00 for general damages in addition to medical expenses. We find, therefore, that an award of $15,000.00 is proper for general damages.

CONCLUSION
For the foregoing reasons, we affirm the trial court insofar as it determined that an unreasonable risk of harm existed. We reverse the trial court in its failure to assign fault on the part of Dorles Snook and find that Snook was 30% at fault and Eisenhardt 70% at fault. Accordingly, damages assessed in this opinion are subject to the reduction for comparative negligence. Costs of this appeal are to be split equally among the parties.
REVERSED IN PART, AMENDED IN PART, AND AS AMENDED, AFFIRMED.
PEATROSS, J., dissents with written reasons.
BROWN, Chief Judge, dissents for the reasons assigned by J. PEATROSS.
PEATROSS, J., dissents.
I dissent because the wet, and possibly slippery, steps do not create an unreasonable risk of harm. Daily life presents multiple situations that have potential to cause injury. The key is that the risk must be unreasonable. Ms. Snook testified that the garbage bag broke on the steps spilling the garbage. She then cleaned up the garbage with a broom and then further sprayed the steps with water from a hose. Even if there was some residue on the steps, I cannot agree that such residue, after a concerted effort to clean it, created an unreasonable risk of harm in this case. The mere fact that a surface was wet, whether made so by the homeowner or by rain, or had a minimum amount of slippery substance on it does not rise to the level of an unreasonable risk. To do so would be akin to holding a homeowner to the level of strict liability for any injury occurring on his property.
Further, I disagree with the majority that the trial court made a factual determination that there was an unreasonable risk of harm. At most, the trial court concluded that Plaintiff was "probably injured and probably fell," but specifically avoided making a credibility determination whether either was true. The trial court's statement that "he should have seen the water and known that there was a hazard" was in the context of its reasons that, essentially, even if there was a hazard, Plaintiff could not recover due to Plaintiff's fault. The trial court disposed of the case based solely on Plaintiff's own fault and made no factual determinations as to whether an unreasonable risk of harm existed that would be subject to our review based on manifest error.